UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


**GENEVIEVE FAIR**                                                                                      **PLAINTIFF**

VS.                          **CASE NO. 4:04CV00359 JMM**
                             **CASE NO. 4:06CV00248 JMM**

**ARKANSAS PUBLIC EMPLOYEES**
**RETIREMENT SYSTEM**                                                                       **DEFENDANT**

**ORDER**

Pending before the Court are defendant's Motions for Summary Judgment and plaintiff's responses. For the reasons stated below, the motions are granted.

Plaintiff, an African American, filed Case No. LR-C-87-675 against the Arkansas Public Employees Retirement System ("APERS") and other state agencies on October 2, 1987 which resulted in a settlement of all claims ("Fair I").

Plaintiff filed a second lawsuit, Case No. LR C-99-00042, against APERS and others on January 15, 1999 in which she alleged race discrimination and retaliation for filing Fair I based upon her not being promoted to the position of investment specialist or investment supervisor ("Fair II"). On June 2, 2003 following a five-day jury trial, the jury returned a verdict in favor of APERS.[1]

On April 7, 2004 plaintiff filed Case No. 4:04CV00359 ("Fair III") contending that (1) she had been assigned the duties of a grade 19 Retirement Specialist while she remained in a grade 18 Accountant position; (2) she was given lesser duties than associated with her position

---

[1] All defendants were dismissed from this lawsuit except APERS by Order of the Court dated September 15, 2000.

1

title; (3) defendant had paid her insufficient wages;  (4) defendant had breached a 1987 settlement agreement in Case No. LR-C-87-6675 ("Fair I"); and (5) failed to promote her because she filed Case No. LR-C-99-042 ("Fair II").   Plaintiff contends that defendant's alleged actions were based upon race and retaliation  in violation of 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Equal Pay Act.

On October 15, 2006, the Court dismissed (1) plaintiff's breach of settlement agreement and retaliation for filing Fair I claims based upon *res judicata* and (2) plaintiff's Equal Pay Act claim because plaintiff had failed to allege any pay disparity based upon her gender.  After assuming all the facts set forth in the complaint in Fair III to be true, the Court declined to dismiss plaintiff's allegation that defendant retaliated against her for filing Fair II.

Plaintiff brought Case No. 4:06CV00248 ("Fair IV") on February 17, 2006, reiterating the same claims raised in Fair III and contending that defendant denied her opportunity to interview for the position of Accountant grade 19 in retaliation for her filing Fair III.[2]

Defendant contends that plaintiff has failed to offer sufficient evidence to support her Title VII race and retaliation discrimination claims, and that she is barred from advancing her race discrimination and retaliation claims based upon work assignments, office location, the erroneous attribution of an audit log error to her, and inadequate training because she failed to filed a charge of discrimination with  the Equal Employment Opportunity Commission ("EEOC") on these claims.

Plaintiff concedes that (1) the defendant as an agency of the State of Arkansas is immune from suit for actions brought pursuant to 42 U.S.C. § 1981; (2) she has failed to state a claim

---

[2]By Order of the Court Fair III and Fair IV were consolidated on March 16, 2006.

under the Equal Pay Act and that her Equal Pay Act is barred by *res judicata* because it has already been ruled upon by the Court in Fairs III;  and (3) that the claim in Fairs IV that defendant violated the 1987 settlement agreement is barred by *res judicata* and, if interpreted as a supplemental state claim for a breach of contract, defendant has Eleventh Amendment immunity from suit.  These claims are dismissed.

The claims remaining before the Court are plaintiff's Title VII claims based upon her race and retaliation for her bringing the complaints in Fair II and III.

I. *Facts*

Defendant is responsible for the administration and management of over 5.5 billion dollars of retirement funds for the Arkansas Public Employees Retirement System, the Arkansas State Police Retirement System, the Arkansas Judicial Retirement System, and the Arkansas District Judge Retirement System.

Plaintiff was hired by defendant in November of 1984 as a Bookkeeper III Accounting Assistant, grade 11.  The State Office of Personnel Management subsequently renamed this position statewide as Tech. I, and upgraded it to a grade 12.

In 1989, as a result of a settlement in Fair I, plaintiff was promoted to grade 17 Accountant position with defendant's Reporting Unit.  This position was subsequently upgraded statewide by the State's Office of Personnel Management ("OPM") to a grade 18 Accountant I.

In 2001, APERS transferred plaintiff's grade 18 Accountant I position from the Reporting Unit to its Benefit Accounting Unit.   Shortly after this transfer, plaintiff took approximately six months of leave under the Family and Medical Leave Act.

She returned to work in the Benefit Accounting Division in April of 2002.   As part of the transfer, plaintiff cross-trained with Millie Bass, a white female who held a Retirement

Specialist grade 19 position and assisted Morris Bhones, who was the Benefit Accounting Supervisor, and held a grade 21 position. In late 2003, plaintiff notified her superiors that she needed more training in performing the retirement reserves with Bass and the tax deposits with Bhones, and she received the additional training.

In September of 2004 Michele Williams, AERS Deputy Director, assigned plaintiff and Bass to a special project of working on a backlog in Benefit Accounting. Plaintiff and Bass continued to work on this special project through the fall of 2005.

In December of 2004, Fair applied for the position of Accountant, grade 19. The Office of Personnel Management minimum qualifications for this position are a formal educational equivalent of a bachelor's degree in accounting or related field; plus three years experience in accounting or a related field. A preferred qualification contained in the class specification was for the applicant to be a Certified Public Accountant or eligible to sit for the CPA examination. Job related experience was allowed as substitution for all, or part, of these basic requirements if approved by the Qualifications Review Committee ("the Committee").

The Committee concluded that plaintiff did not meet the minimum qualifications. At the time of her hire, Fair had an Associate Degree from Capitol City Business College in Little Rock. She subsequently took some classes at the University at Little Rock and received a ""D" in one of her two financial accounting courses.

In determining that plaintiff did not meet the minimum qualifications, the Committee considered that plaintiff did not have a bachelor's degree, had taken only 56 hours in college courses with very few being accounting courses. It also recognized that Fair's previous positions at APERS consisted mainly of clerical accounting functions which resulted in her having insufficient work experience for the financial accounting position. The Accounting grade 19

position was ultimately awarded to Chin Chih Ku, who had a B.A. in Business Administration and an M.B.A. and who was eligible to sit for the CPA examination.

On September 18, 2005, plaintiff began taking paid vacation and sick leave which she exhausted on October 7, 2005. After October 8, 2005 plaintiff was granted FMLA leave and "catastrophic leave" which was made possible through paid leave donations by plaintiff's co-workers. On November 22, 2005 plaintiff resigned from APERS.

Throughout plaintiff's tenure with defendant, the agency did not take any disciplinary actions against plaintiff.

II. *Discussion*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir.2001); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399 (8th Cir.1995).

At the summary judgment stage in an employment discrimination action, in the absence of direct evidence of racial or ethnic discrimination, an employee must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm, specifically, by presenting a *prima facie* case of intentional discrimination plus sufficient evidence that one or more of the employer's proffered nondiscriminatory reasons is a pretext for unlawful discrimination. *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004).

Under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 801-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must first establish a prima facie case of discrimination to establish a claim under Title VII. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002). Once the plaintiff does this, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason. *Id.* If the employer satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretext for unlawful discrimination. *Id.* To establish that an employer's legitimate, nondiscriminatory reason is pretext for discrimination, an employee must offer evidence for a reasonable trier of fact to infer discrimination. *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir.1998).

III. *Plaintiff's Title VII Race Claim in Fair III and Fair IV*

To prove a claim of discrimination based upon race, plaintiff must establish that: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. *Tolen v. Ashcroft*, 377 F.3d 879 (8th Cir. 2004). It is not disputed that plaintiff is a member of a protected class. However, she has failed to present sufficient evidence either that she has suffered an adverse employment action or that similarly situated employees outside her protected class were treated differently.

Plaintiff contends that she suffered an adverse employment action when (1) she was forced to cross-train with Bass; (2) defendant refused to give her the opportunity to gain experience in financial accounting; (3) she was assigned to work on the backlog resulting in her having the same duties as Bass while being paid less; (4) she was not given the opportunity to interview for the grade 19 Accountant position; (5) the location of her office upon her transfer;

(6) defendant erroneously attributed one accounting error to plaintiff following an internal audit which should have been attributed to a white employee; and (7) she was provided with inadequate training to perform backup duties for Bass's grade 19 position.[3]

Plaintiff first two claims will not considered by the Court as they are attempts to re-litigate the claims she made in Fair II.[4]

Plaintiff and defendant agree that plaintiff and Bass were assigned identical duties in alternating months while working through the backlog in Benefit Accounting. The result of this assignment was that over an approximate one year period, in alternate months, plaintiff's duties were those of a grade 19 Retirement Specialist while she was classified, and paid, as a grade 18 Accountant.

---

[3] Defendant contends that the assignment of duties about which plaintiff complains occurred in 2001 resulting in plaintiff's EEOC charge being untimely filed in Fair III and Fair IV. *See* 42 U.S.C. § 2000 e-5(e). Plaintiff contends that each time defendant paid her at a grade 18 level while she continued to be assigned grade 19 level duties, and each time she performed the duties she contends are not accounting in nature, a discrete act of discrimination occurs resulting her EEOC charge being timely filed. *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661 (8th Cir. 2006). The Eighth Circuit held in *Wedow* that "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 670. Because plaintiff has failed to present evidence sufficient to withstand a motion for summary judgment on the merits of all her claims, the Court declines to address which acts were within the 180- day period for filing the EEOC charge and which acts were without that time.

[4] Plaintiff's EEOC charge in Fair II states that "Blacks as a class have been systematically excluded from jobs in the Investment Department whereas Whites that do not meet the minimum qualifications are promoted or given job/opportunities"  *See* Doc. #1 in Case No. 4:99CV00042-GH.  Moreover, plaintiff's Motion for a New Trial in Fair II makes the same arguments she presents in these cases. *See Id.* at Doc #98.  Plaintiff's testimony is that the assigned work duties which plaintiff asserts are unacceptable in Fair III and Fair IV were established when plaintiff was transferred in 2001 from the Reporting Unit to the Accounting Unit.

Even if the Court were to consider these claims, plaintiff has failed to present sufficient evidence in Fair III or Fair IV that persons outside her protected class were treated differently from her in assignment of duties or that defendant's non-discriminatory reasons for assigning plaintiff accountant clerical duties were pretext.

Plaintiff has established that receiving less pay than Bass in alternative months, and not being allowed to interview for the grade 19 Accountant position are adverse employment action.

However, there is insufficient evidence to establish that the erroneously attributed accounting error was an adverse employment action. The parties agree that defendant erroneously attributed an accounting error to plaintiff following an internal audit. This would be an adverse employment action but for the fact that defendant corrected plaintiff's performance evaluations when it was discovered that plaintiff did not make the error in question, and plaintiff's evaluation was changed to correct the error.

Plaintiff has not presented any evidence that her office space assignment was a materially adverse action. It is undisputed that when plaintiff was transferred from the Reporting Unit to the Benefit Accounting Unit, she was assigned the office space of the person she was replacing.

Likewise, plaintiff has not presented sufficient evidence that she was denied training. Plaintiff testified that she asked for, and received, training in the retirement reserves and tax deposits areas by Bass, agency internal auditor Tricia Maddox, and Walker. Plaintiff further testified that she requested no other training.

Lastly, plaintiff has failed to present a *prima facie* case of racial discrimination because there is insufficient evidence that a similarly situated employee outside of plaintiff's protected group was treated differently which would give rise to an inference of discrimination.[5] The only inference of racial discrimination is that Bass is a white female and plaintiff is an African-

---

[5]Plaintiff depends heavily on the testimony of Jacqueline Parrish, the manager of Retirement Counselors. Parrish has been employed for over 30 years with the defendant and she testified concerning Bass' and plaintiff's responsibilities. It is undisputed that Parrish has not had supervisory authority, directly or otherwise over either Bass or plaintiff since the early 1990's and thus, would not have direct evidence of the assigned duties of either employee.

American female.   The evidence is clear that Bass is not similarly situated to plaintiff.

To the extent that plaintiff has established a *prima facie* case of racial discrimination she has failed to provide any evidence that defendant's stated reason for her sharing duties with a grade 19 employee, for not allowing her to interview for the grade 19 Accountant position, the erroneous report of an error, or the office assignment  were pretext.   Defendants state that the reasons that plaintiff and Bass shared the same responsibilities was the backlog in their department and the need for cross-training.  Because the backlog was delayed by other events, it took longer for the project to be completed.  However, there is no evidence that defendants used the backlog of work in plaintiff's department to discriminate against her.

Defendant's stated reason for not allowing plaintiff to interview for the grade 19 Accounting position is that she was not qualified for the position and plaintiff has not presented any evidence that she was so qualified.

Additionally there is no evidence that the error which was initially erroneously attributed to plaintiff, and ultimately corrected was a pretext for discrimination.  Finally, defendant states that plaintiff was assigned the office of the person who she replaced and there is no evidence that this employment decision was a pretext for discrimination.

IV. *Plaintiff's Title VII Retaliation Claim in Fair III and Fair IV*

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in protected action such as making a racial harassment complaint.   42 U.S.C. § 2000e-3(a).   To succeed on a claim of retaliation under Title VII, a plaintiff must show that (1) she engaged in a statutorily protected activity, and (2) an adverse action was taken against her; and (3) a causal connection exists between the two events.  *See Gilooly v. Missouri Dept. Of Health and Senior Services*, 421 F.3d 734, 739 (8th Cir. 2005).  However, the Supreme Court recently determined

that a party need not show that he suffered an adverse employment action, but instead may show that her employer's action "would have been materially adverse to a reasonable employee" such that it "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006). In *Burlington*, the Supreme Court emphasized that "[t]he scope of the anti retaliation provision [of Title VII] extends beyond workplace-related or employment-related retaliatory acts and harm. *Id.*

There is no dispute that plaintiff engaged in a protected activity. By filing Fair II, III, and IV, plaintiff has been engaged in protected activities since 1999.

Having an error erroneously assigned and then corrected or, being assigned a different office upon transfer, does not amount to an employment action which would have dissuaded a "reasonable worker from making or supporting a charge of discrimination." There is no evidence that plaintiff suffered any harm either related to her employment or that would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

Plaintiff's claim regarding insufficient training is also without merit for purposes of plaintiff's retaliation claim.

Given that the plaintiff's September, 2004 assignment which led to plaintiff and Bass working on a backlog in Benefit Accounting with plaintiff being paid a different salary and defendant's failure to allow plaintiff to interview for the grade 19 Accountant in December of 2004 have already been held to be "adverse" for purposes of her discrimination claim, those actions are obviously "adverse" for purposes of her retaliation claim. However, plaintiff has failed to present sufficient evidence that there is any relationship between her protected activity and these adverse employment actions.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, . . . but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (citations omitted).  Here, plaintiff filed Fair II in January of 1999 and Fair III in April of 2004.  Plaintiff was assigned to the backlog in September of 2004 and was not selected for an interview or for the grade 19 Accountant position in December of 2004.  Thus the timing of the relevant events do not support a causal connection.  Plaintiff has failed to establish a *prima facie* case of retaliation.

Even if plaintiff had established a *prima facie* case, defendant's stated reason for not offering an interview to plaintiff for the grade 19 Accounting II position in December of 2004 is that plaintiff was not qualified for the position based upon her education.  Plaintiff has presented insufficient evidence that additional experience in financial accounting would have overcome her lack of education or that this stated reason was pretext.  Likewise plaintiff has failed to establish that defendant's stated reasons for assigning plaintiff's office space,  for making an erroneous assignment of an accounting error to plaintiff, and for assigning plaintiff and Bass to work on a backlog in Benefit Accounting are pretext.

V.  *Conclusion*

The thrust of plaintiff's complaint is that she was not happy about her transfer from the the Reporting Unit to the Benefit Accounting Unit of APERS and the resulting change in her assigned duties or office space and that she was not allowed an interview for the grade 19 Accountant position.   "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve

intentional discrimination." *Arraleh v. County of Ramsey*, 461 F. 3d 967, 975 (8th Cir. 2006) (citation omitted). Here, plaintiff has failed to present evidence of intentional discrimination in her transfer or her duties after the transfer.

Based upon the above, defendants' motion for summary judgment is granted (#23) and plaintiff's complaints in case #4:04CV00359 and #4:06CV00248 are dismissed. Judgment will be entered accordingly.

IT IS SO ORDERED THIS  6  day of   November, 2006.

_____
James M. Moody
United States District Judge